The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner George T. Glenn, II. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
The parties submitted a Pre-Trial Agreement at the hearing. The same along with its attachments and all stipulations are incorporated herein by reference. Parts of this agreement are set out as follows:
1. The parties are properly before the Industrial Commission, the Industrial Commission has jurisdiction of the parties and the subject matter, and the parties are subject to and bound by the provision of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between the defendant-employer and the plaintiff-employee at all relevant times herein.
3. American Motorists Insurance Company was the workers' compensation carrier on risk at all relevant times herein.
4. The employee's average weekly wage at the time of the injury was $139.65, yielding a compensation rate of $93.10 per week.
5. Prior to this hearing, plaintiff had last worked for defendant-employer on 3 October 1995.
6. The parties entered into a Form 21 Agreement dated 20 April 1994, wherein defendants admitted that plaintiff was injured on 28 March 1994, with plaintiff sustaining a herniated lumbar disc. Defendants agreed to pay plaintiff temporary total disability benefit for necessary weeks beginning 5 April 1994 at a rate of $93.10 per week. This agreement was approved by the Industrial Commission on or about 23 May 1994.
7. The parties entered into a Form 26 Agreement dated 3 November 1994, wherein defendants agreed to pay plaintiff temporary total disability benefits beginning 25 October 1994 and continuing for necessary weeks at the rate of $93.10 per week. This agreement was approved by the Industrial Commission on or about 28 December 1994.
8. Defendants paid plaintiff temporary total disability benefits from 29 March 1994 through 13 October 1994; from 1 November 1994 through 27 March 1995; and temporary partial benefits from 13 October 1994 through 24 October 1994.
9. The issues to be determined at hearing are:
a) Whether plaintiff is entitled to any further benefits
 b) Whether defendants are subject to any penalties for non-payment to plaintiff of the benefits which had been ordered
 ***********
The Full Commission finds facts as follows:
 FINDINGS OF FACT
1. At the time of hearing, plaintiff was fifty-three years old. Plaintiff is a high school graduate and has a real estate license.
2. At the time of his injury, plaintiff worked for defendant-employer in a part-time position. Plaintiff's position with defendant-employer required him to stock shelves with groceries, unload trucks, break down pallets, and place the items from the pallets onto carts. The carts containing the grocery items then were placed in the store aisles so the grocery items could be placed onto shelves.
3. Plaintiff also worked in a full-time position at the time of his injury. His full-time position was with Spencer Parlier, Inc. Plaintiff worked as a small appliance salesman for Spencer Parlier, and he worked at least forty hours per week in this position.
4. Plaintiff would leave his full-time job and then go to work in his part-time position with defendant-employer. Plaintiff worked between twenty to twenty-eight hours per week in his part-time position with defendant-employer.
5. On or about 28 March 1994, plaintiff was lifting a wooden pallet when he felt a severe pain in his back. An MRI showed that plaintiff had suffered a ruptured disc as a result of his injury. He was initially treated by Dr. Michael B. Hussey. Dr. Hussey initially diagnosed plaintiff's condition as herniated nucleus pulposus at L-5/S-1 on the left. Plaintiff did not respond to conservative treatment and on or about 19 April 1994, Dr. Hussey performed a partial hemilaminectomy at L-5/S-1 on the left wherein the ruptured disc was removed.
6. Plaintiff initially responded well to the surgery of 19 April 1994, and he returned to work. Shortly after returning to work he began to experience left leg and back pain with numbness. Dr. Hussey again attempted to treat plaintiff's condition with conservative measures but plaintiff did not respond well to them and on or about 13 December 1994, plaintiff was taken out of work.
7. Dr. Hussey performed a second surgery to explore the L-5/S-1 area and remove any ruptured disc and decompression of the nerve root, on or about 28 December 1994. Plaintiff was released to return to his job with defendant-employer on or about 14 February 1995. He continued to improve and was released to return to his full-time and part-time job on or about 7 March 1995, with a twenty pound lifting restriction. Plaintiff's twenty pounds lifting limitation was removed on or about 18 April 1995.
8. Dr. Hussey released plaintiff from his care on or about 13 June 1995. He gave plaintiff a 15% permanent partial disability rating to his back and indicated that plaintiff should return if he needed any further medical attention in reference to his back.
9. Plaintiff continued to work in both his jobs until August 1995 when he again started to experience problems to the degree that required medical attention. Instead of going to see Dr. Hussey he was sent to see Dr. Craig Derian. Dr. Derian placed plaintiff under the restrictions of no lifting over 10 to 15 pounds, no prolonged repetitive bending, lifting or stooping, and frequent position changes from sitting to standing to walking. Plaintiff gave a copy of these restrictions to his supervisor Jeff Beane.
10. Mr. Beane informed plaintiff that he did not have any work for him within those restrictions, and plaintiff stopped working for defendant-employer on 3 October 1995, based on the lack of work within his restrictions. Mr. Beane did not inform the store manager that plaintiff was under any work restrictions. Richard Hudson, the store manager, indicated that had he been informed that he did have work for plaintiff within these restrictions.
11. Plaintiff had a heart attack in May 1995 and had bypass surgery in December 1995. As a result of his heart attack in May 1995, plaintiff was out of work for a couple of weeks and he was thereafter released to and did return to work. He underwent bypass surgery on 14 December 1995, and he was released to return to work from this procedure on 29 January 1996.
12. At the time of the hearing before the Deputy Commissioner, plaintiff was working full-time in his position with Spencer Parlier, his full-time employer. He had not returned to work in his position with defendant-employer.
13. Plaintiff's care in reference to his back was taken over by Dr. James E. Nitka. Dr. Nitka initially saw plaintiff in October 1995. When Dr. Nitka took over plaintiff's care he was concerned about the degenerative changes in his back and how he could treat plaintiff condition, whether it was through conservative means or surgery. The job that plaintiff had performed after returning to work for defendant-employer was beyond the restrictions established by Dr. Nitka as a result of his injury by accident.
14. Surgery is not an alternative for plaintiff. Plaintiff can work his full-time positions with Spencer Parlier without surgery. However, he cannot work both his full-time position and his part-time position because of the injury. Plaintiff can work forty hours per week but cannot work the part-time hours he had worked prior to his injury because of the injury. Whatever work plaintiff does must be within his restrictions must allow for him to change from sitting to standing to walking on a frequent basis.
15. All of plaintiff's treating physicians agree, and the Full Commission finds, that plaintiff could not and cannot do repetitive bending, lifting and stooping. Nor can he lift objects on a regular basis that weigh more than twenty to twenty-five pounds.
16. After the hearing of this matter plaintiff attempted to return to work for defendant-employer in his part-time position in addition to working his regular forty hour week with Spencer Parlier. Plaintiff was able to work for twenty hours the first week, eight hours the second week, eleven and a quarter hours the third week and seven and three quarter hours the forth week. He had to quit working after the fourth week due to the pain he was experiencing.
17. Dr. Nitka caused a functional capacity evaluation (FCE) to be performed on plaintiff on or about 11 March 1997. The FCE indicated that plaintiff was not able to work in his part-time position in addition to his full-time position. It basically confirmed the other findings of plaintiff's treating physicians.
18. Plaintiff can and does work now but he cannot work for more than forty hours per week and he is no longer able to work the additional twenty to twenty-eight hours in a part-time position that he was able to do prior to his admitted injury by accident. The real question here is whether plaintiff is entitled to temporary total disability benefits for his inability to now work in a part-time position in addition to his full-time position as he was able to do prior to his injury by accident.
19. Plaintiff's average weekly wages in his position with Spencer Parlier, his full-time position, at the time of his injury were $400.00 per week. His average weekly wages in his position with defendant-employer were $139.65 per week at the time of his injury by accident. This gave him a total average weekly wage of $539.65 per week at the time of his injury by accident. Therefore, plaintiff had an established weekly earning capacity of $539.65.
20. Plaintiff sustained an admittedly compensable injury by accident on 28 March 1994 arising out of and in the course and scope of his employment with defendant-employer for which he is entitled to receive workers' compensation benefits.
21. Prior to plaintiff's admittedly compensable injury by accident, he was able to and did work between sixty to sixty-eight hours per week, being paid $400.00 in his full-time position and $139.65 in his part-time position.
22. After 3 October 1995, plaintiff has not been able to work the normal sixty to sixty-eight hours per week as he did prior to his injury by accident, nor has he been able to earn the wages he was accustomed to earning while able to work sixty to sixty-eight hours per week, except for the periods of time he attempted to return to his position with defendant-employer.
23. Plaintiff has sustained a decrease in his ability to earn wages as a direct result of his injury by accident of 28 March 1994, for which defendant admitted and accepted liability.
24. Plaintiff's average weekly wage with defendant employer at the time he sustained the said injury was $139.65, yielding a compensation rate of $93.10.
25. Although plaintiff is able to work 40 hours a week he is unable at present to earn his pre-injury wages because prior to the injury he held two jobs, one of them full time at 40 hours a week and the other part-time at less than 40 hours a week. Since he is able to work 40 hours per week it is fair and just that he continue with his full-time employer at 40 hours a week. Since the injury occurred on his part time job, it is fair and just that such employer bear the entire burden of the consequences of such injury.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff is entitled to the payment of all medical expenses incurred, or to be incurred, as a result of the injury sustained.
2. As the result of his 28 March 1994 injury by accident plaintiff is entitled to be paid by Defendants temporary total disability compensation at the rate of $93.10 per week for the period of 4 October 1995 through the present and continuing until such times as plaintiff is able to return to his pre-injury earning capacity or until further order of the Industrial Commission.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to attorney's fees hereinafter awarded, defendant shall pay to plaintiff compensation at the rate of $93.10 per week starting 4 October 1995 and continuing until such time as plaintiff is able to return to his pre-injury earning capacity or further orders of the Industrial Commission. Excluded from this period is from 28 December 1995 through 29 January 1996 and the week of 24 November 1996. Such compensation as has accrued shall be paid in a lump sum.
2. Defendant shall pay for all medical expenses incurred or to be incurred by plaintiff as a result of the compensable injury for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen plaintiff's period of disability.
3. An attorney's fee of twenty-five percent (25%) of all the compensation due plaintiff herein is hereby awarded to plaintiff's counsel as attorney's fees. Payment shall be made by deducting this amount from the lump sum due plaintiff and paying said amount directly to plaintiff's counsel. Thereafter, every fourth check shall be paid directly to such attorney.
4. Defendants shall pay interest on the lump sum compensation due plaintiff at the rate of 8 percent per year from the date of the hearing before the Deputy Commissioner until paid.
5. Defendants shall pay the costs of this action.
This the 1st day of February 1999.
 S/ _____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ _____________ CHRISTOPHER SCOTT COMMISSIONER
DISSENTING:
S/ _____________ RENÉE C. RIGGSBEE COMMISSIONER